THOMAS FORRESTEL v. W. B. FORRESTEL, Appellant.

**Cancellation of Deed by Father:** FAILURE OF CONSIDERATION: *Undue influence.* A father in declining years induced his son to return home, and thereafter the son, by threatening to leave, induced his father to convey to him land worth $3,000, in consideration of one dollar and love and affection, with the understanding that the son should care for and help reform a younger brother. The son thereafter borrowed $800.00 on the land, contracting to sell it for two-thirds of its value, and advised his brother to get a deed for the remainder of his father's property, telling him ' if you work the old man all right, he will give you the deed." Six weeks after the son received the deed he left the father, without intending to return. *Held*, that the father was entitled to have the deed canceled for failure of consideration, and as procured through undue influence; the inability to restore the perfect *status quo* being wholly to the advantage of the defendant.

*Appeal from Johnson District Court.*—HON. M. J. WADE, Judge.

THURSDAY FEBRUARY 8, 1900.

ACTION in equity to set aside and cancel deed. Decree for plaintiff. Defendant appeals.—*Affirmed.*

*Bailey & Murphy* for appellant.

*Slater & Hunt* for appellee.

SHERWIN, J.—On the 17th day of May, 1897, the plaintiff herein conveyed to the defendant, who is his son, eighty acres of land, of the value of about three thousand dollars. The consideration named in the deed is one dollar and love and affection. At the time of this conveyance to the defendant, the plaintiff was a widower, sixty-six years of age, and had six other children,—three daughters, who were in an Illinois convent; one married daughter, who lived in Cedar county; a daughter and a son, who lived with the father. The value of the plaintiff's entire estate at the time was about seven thousand dollars. The defendant had left home when about sixteen years old, and had never returned to nor visited the plaintiff's home during the sixteen years prior to the twenty-ninth of April, 1897. The son Thomas, who lived at home, was somewhat dissipated, and was not of much help or comfort to the father in his declining years. The plaintiff, through correspondence, induced the defendant to return to Iowa City, his home, and sent him fifty dollars for that purpose. The defendant arrived there with his wife, April 29, 1897, and on the seventeenth of May following, as we have seen, the deed to the land in question was executed and delivered to him. The plaintiff now claims that the consideration for the conveyance has failed, and that it was obtained by fraud and undue influence.

Without setting out in detail the evidence supporting the first contention of the plaintiff, we may say that it tends strongly to sustain his claim. When the defendant first reached his father's home, he asked for a lease of the land for a term of five years. This was agreed to by plaintiff, but, before it was consummated, the defendant asked that the land be deeded to him. This the plaintiff at first refused to do, whereupon the defendant told him, if he did not do so,

he would at once leave, and return to his former home, and that plaintiff would never hear from him again. After thinking the matter over for a short time, the plaintiff told him if he would stay there with his wife, and "take care of the place, and take care of Tom and the girls, and let them have a share of it, because they had helped to get it," and keep Tom there to help him work the place, he would give him the deed. This, the plaintiff says, was agreed to by the defendant, and the deed was executed as stated. It clearly appears from the record before us that it was fully understood by the defendant that he was to help reform Tom, and to provide a place for him to work where he could be under his eye and influence, and to this extent, at least, relieve the plaintiff from the care and anxiety his misconduct had caused him; and, further, that defendant knew that his father was very anxious for him to remain close to him in his old age. But the record in the case shows, without contradiction, that within a short time after the land had been conveyed to him, the defendant borrowed eight hundred dollars upon it, and that he made frequent attempts to sell it for two-thirds of its value, and did finally contract to sell it for about two thousand dollars. In about six weeks after receiving the deed, the defendant, with his wife, moved back to Colorado. He failed in every respect to carry out the evident intent and purpose of the conveyance to him, and does not now claim that he ever intends to return, or that he intends in any way to carry out his moral or legal obligation to his father on account of the transaction in question. But, aside from the question of failure of consideration, we think the district court rightly held that all the facts and circumstances shown in the evidence, only a few of which are referred to in this opinion, sustained the plaintiff's contention that the deed was procured through undue influence. He at one time told his brother that he had obtained a deed for the eighty acres, and suggested to the brother that he ought to try and get a deed to the remaining forty acres, and a

bill of sale of the stock, and said, "If you just work the old man all right, he thinks a good deal of you, and I think he will give you a deed all right." It is very evident to us, from the entire record, that he deliberately did just what he was advising his younger brother to do,, and that, as a result of this unfilial action on his part, he has taken unconscionable advantage of his father's confidence in him. It has been well said that "he who bargains in matters of advantage with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence. In cases where great confidence has been reposed, and an ascendancy has been obtained by one party over another, if a court of equity sees that any acts or stratagem or any undue means entered into the bargain, it will avoid the grant." *Whelan v. Whelan,* 3 Cow. 537; *Brice v. Brice,* 5 Barb. 533. In the case at bar the plaintiff derived no benefit from the transaction in question, while the defendant obtained nine hundred and fifty dollars, eight hundred dollars of which was secured by mortgage on this land. The plaintiff cannot be placed *in statu quo,* but the defendant will, in any event, derive great advantage from his unjust dealing with his father. In cases where the parties can be placed *in statu quo,* a court of equity will generally grant relief to the weaker party when it is made to appear that some degree of undue influence was exercised in procuring valuable property without adequate consideration. *Leighton v. Orr,* 44 Iowa, 679-689; *Tucke v. Buchholz,* 43 Iowa, 415. See, also, *Samson v. Samson,* 67 Iowa, 253, note 6. All of the equities of this case are with the plaintiff, and the decree of the district court is AFFIRMED.

GRANGER, C. J., not sitting.