GEORGE KRAMER, Guardian of the Estate of ADAM A. LEINBAUGH, Incompetent, Appellant, v. WALTER J. LEINBAUGH et al., Appellees.

No. 42594.

FEBRUARY 12, 1935.

M. L. Sutton and H. J. Ferguson, for appellant.

Cook & Balluff and E. L. Miller, for appellees.

KINTZINGER, J.—On September 9, 1931, Adam A. Leinbaugh executed a warranty deed conveying about 400 acres of land to his two sons, Walter J. Leinbaugh and Clarence E. Leinbaugh, for an alleged valuable consideration. The grantor was about 75 years old, had been married since he was 23, and raised a family of nine children. For some years prior to the execution of the deed, he and his wife had serious domestic difficulties, which culminated in divorce proceedings, resulting in a decree of divorce and alimony, on July 14, 1931, in favor of the wife. The record shows that in July, 1929, and prior to the decree of divorce, voluntary guardianship proceedings in behalf of Mr. Leinbaugh were commenced, and Walter J. and Arthur Leinbaugh were appointed guardians. Prior thereto he was greatly troubled as a result of his domestic difficulties, superinduced by his advanced age. There was, however, no adjudication of his mental incompetency at that time, and the

guardians were appointed with his knowledge and consent, as a result of an agreement between himself, his wife, and some members of his family.

Prior to January 14, 1931, Adam A. Leinbaugh filed an application in the district court of Clinton county, Iowa, to terminate said guardianship, and for a removal of the guardians. This application was resisted, and on a hearing thereon, the court, on a finding that Mr. Leinbaugh was mentally competent to transact his own business, entered a decree on January 14, 1931, terminating the guardianship.

The divorce proceedings referred to were commenced thereafter, and the decree entered on July 14, 1931, awarding his wife the homestead and a judgment for $5,500 as permanent alimony. In the divorce proceedings Mr. Leinbaugh was represented by Attorney E. L. Miller of Clinton, Iowa.

After the decree of divorce was entered Mr. Leinbaugh made unsuccessful efforts, through banks and insurance companies, to raise money to pay the alimony. Thereupon he entered into negotiations with his sons, Walter and Clarence, for this purpose, resulting in an agreement between them that, in consideration for a deed to the land, the two sons were to furnish $5,500 to pay the alimony, execute their note of $6,000 to his son Lafe Leinbaugh, cancel a note of $3,500 held by his son Clarence against him, and pay $200 which he owed to his attorney, Miller, for legal services. The land was to be conveyed subject to a mortgage of $15,000. This agreement was entered into and the deed in question was executed and delivered September 9, 1931, the consideration being as follows:

Cash paid for the alimony judgment................................$ 5,500
Note surrendered to Adam Leinbaugh by Clarence Leinbaugh   3,500
Note executed by grantees to Lafe Leinbaugh......................   6,000
Cash paid Attorney E. L. Miller...................................     200
Farm mortgages assumed...........................................  15,000

$30,200

About a year after the execution of the deed, the plaintiff was appointed guardian of the property of Adam Leinbaugh, and commenced this action to cancel the deed on the grounds of mental incompetency, fraud, and undue influence. The ward died after the

commencement of this action and the administrator of his estate was substituted as party plaintiff.

I. The reasons given for a reversal of the decree below are that the court erred in failing to set aside the deed because Adam A. Leinbaugh at the time of the execution thereof was incompetent and of unsound mind, and because the deed was procured through fraud and undue influence.

The questions presented are purely of fact. The record shows a disputed question of fact relating to the mental capacity of an aged person to conduct his ordinary business and look after his own interests in connection with a transfer of his property. There was evidence that he was afflicted with senile dementia at the time of making the deed in question. There was also evidence to show that he had sufficient mental capacity to understand the nature of the transactions in question, at that time. Witnesses were produced on one side tending to show that mental incompetency existed; likewise there was much evidence upon the other side to show that mental incompetency had not been established.

The rules of law in this class of cases have been well settled by the decisions of this court. The general rule is that the burden is upon plaintiff to establish the grantor's mental incompetency by a clear preponderance of the evidence. The same rule applies with reference to the question of fraud and undue influence. State v. Geddis, 42 Iowa 264; Leonard v. Shane, 182 Iowa 1134, 166 N. W. 373; Sutherland State Bank v. Furgason, 192 Iowa 1295, 186 N. W. 200; In re Estate of Paczoch, 202 Iowa 849, 211 N. W. 500; Crawford v. Raible, Admr., 206 Iowa 732, 221 N. W. 474; O'Neil v. Morrison, 211 Iowa 416, 233 N. W. 708; Grunewald v. Estes, 173 N. W. 935; Bishop v. Leighty, 237 N. W. 251.

There is some dispute, however, between the parties as to the burden of proof in this action. It is contended by appellant that a confidential and fiduciary relationship existed between the parent and sons, and that the burden of proof is therefore upon the defendant to establish the grantor's mental competency, and lack of fraud and undue influence. It is the settled rule of law in this state that where a confidential or fiduciary relationship exists between the grantor and grantee the presumption will obtain that the transaction was fraudulent and voidable. 2 Pomeroy (3d Ed.) section 956; Fitch v. Reiser, 79 Iowa 34, 44 N. W. 214; Lampman v. Lampman, 118 Iowa 140, 91 N. W. 1042; Reese v. Shutte, 133 Iowa

681, 108 N. W. 525; Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873; Vorse v. Vorse, 186 Iowa 1091, 171 N. W. 186; Pruitt v. Gause, 193 Iowa 1354, 188 N. W. 798; Johnson v. Johnson, 196 Iowa 343, 191 N. W. 353. Mere blood relationship, however, does not, of itself, create the confidential relationship calling for the application of this rule. Gregory v. Bowlsby, 115 Iowa 327, 88 N. W. 822; McKee v. McKee, 190 Iowa 1357, 181 N. W. 672; Shaffer, Guardian v. Zubrod, 202 Iowa 1062, 208 N. W. 294; Krcmar v. Krcmar, 202 Iowa 1166, 211 N. W. 699; O'Neil v. Morrison, 211 Iowa 416, 233 N. W. 708.

We fail to find, from the evidence in this case, that such a confidential or fiduciary relationship existed between Adam Leinbaugh and his two sons, Walter and Clarence, as to call for the application of this rule. However, even though it should be conceded, for the purpose of argument, that such relationship did exist, it is our finding from the evidence that the defendants have shown, by the greater weight of the evidence, that Adam Leinbaugh, notwithstanding his advanced age, had sufficient mental capacity to understand the nature of the transaction in question; and that no fraud or undue influence, sufficient to cancel the deed, was established.

We are not disposed to, and it will serve no useful purpose to enter into a discussion and consideration of the evidence of all the witnesses. Aside from plaintiff's medical experts, neither one of whom had any previous acquaintance with the decedent, the testimony of the plaintiff was limited to members of the decedent's family and two or three disinterested witnesses. The members of the family were naturally interested in the result of the action. The record shows that Adam Leinbaugh was in an advanced age and was suffering from senile dementia at the time of the trial, and was then under guardianship. He had also been under a guardianship during the year of 1930, but that guardianship was terminated in January, 1931, when the court found that he had sufficient mental capacity to transact his own business. Between that time and July, 1931, divorce proceedings were pending against him. In that case he was represented by Attorney Miller of Clinton, and no suggestion or claim was ever made during the pendency thereof that he was of unsound mind. If there had been the trial would have been halted. It terminated with a decree of divorce and alimony on the 14th day of July, 1931. The evidence fails to show that he was not

mentally competent between that time and the execution of the deed, about two months later.

Plaintiff's evidence was confined mainly to some members of decedent's family who, from peculiar acts on the part of the decedent, testified that, in their opinion, he did not have sufficient mental capacity to transact business or make a conveyance in September, 1931. Plaintiff also offered testimony of two medical experts, who testified that at the time of the trial he was suffering from senile dementia, and, from the history of the case as related to them, they believed he was incompetent to transact ordinary affairs of business in September, 1931. Their testimony was given in 1933, and, prior to that time, neither of them had any previous acquaintance with him.

Plaintiff's medical evidence was countered by the testimony of a medical witness for defendants, who had been acquainted with and treated Leinbaugh for some ailment during the year 1930, and who met and talked to him during the year 1931. He testified that, in his opinion, Leinbaugh had sufficient mental capacity to transact his own business in the fall of 1931. Defendants' other witnesses, included a large array of disinterested neighbors, all of whom said they had been acquainted with the decedent for a great many years, and that he had sufficient mental capacity, at the time in question, to conduct his own business and make a conveyance. It also included the testimony of Attorney E. L. Miller who represented Mr. Leinbaugh in the divorce proceedings and who was present at the very time the deed was executed. He is an attorney of wide experience, was acquainted with Leinbaugh, and gave it as his opinion that Mr. Leinbaugh fully understood what he was doing when the deed was executed.

We have carefully considered all of the evidence offered on both sides and have come to the conclusion that not only has plaintiff failed to show, by a clear preponderance of the evidence, that Adam Leinbaugh was incompetent to transact ordinary business or make the conveyance in question, but that whatever evidence was offered on that question was overcome by the evidence offered thereon by defendants. We are satisfied with the conclusion reached upon this branch of the case by the lower court and believe the decree entered thereon is correct.

It is claimed, as one of the elements of fraud and undue influence, that the consideration for the deed was grossly inadequate

and that the value of the farms conveyed exceeded the consideration named by $25,000. There is evidence in the record showing such a high value of land. There is likewise evidence showing that the land, at the time in question, was not worth more than the consideration alleged. Such was the finding of the lower court, and we are satisfied therewith.

For all of the reasons hereinabove set out we believe the judgment and decree of the lower court was right and the same is hereby affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, DONEGAN, POWERS, RICHARDS, and HAMILTON, JJ., concur.